1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9
THE UNITED STATES OF AMERICA,
10
                              NO. CIV. S-80-583 LKK
11          Plaintiff,

12      v.
                                O R D E R
13 H.C. ANGLE, et al.,

14
            Defendants.
15 _____/

16      This case began over ninety years ago.  In 1918, the United

17 States commenced a water rights adjudication to settle the water

18 rights to the flows of Stony Creek and its tributaries in Northern

19 California.  As part of the adjudication process, the United States

20 named as defendants all then-existing claimants to the subject

21 water, several hundred parties in all.  The adjudication culminated

22 in the Angle Decree on January 13, 1930, which determined the

23 rights of all parties.

24      Pursuant to that decree, the Bureau of Reclamation receives

25 water which it uses to operate the Orland Project, which in turn

26 provides water that is used in irrigating agricultural lands.  The

1

1  Bureau, now standing as plaintiff to the Angle decree, seeks to
2  modify the "place of use" provisions in the decree, to allow Orland
3  Project water to be used to irrigate somewhat different lands.

4  One successor in interest to a party to the decree, defendant
5  Michael J. Barkley, has filed an opposition to the proposed
6  amendment.  In addition, defendant Barkley has filed a counter-
7  motion that argues that the entire decree is invalid, and in the
8  alternative, that the decree should be substantially modified
9  because of changed circumstances.  For the reasons stated below,
10 the court grants plaintiff's motion to amend the decree, and denies
11 defendant's motion.

**I. BACKGROUND**[1]

**A.   The Angle Decree**

14 The Reclamation Act of 1902, 43 U.S.C. § 391 et seq., empowers
15 the federal government to acquire water rights for the reclamation
16 and irrigation of land.  Pursuant to this authority, the United
17 States Bureau of Reclamation sought to exercise this authority and
18 acquire water from Stony Creek to serve the Orland Reclamation
19 Project.

20 In an action commenced in 1918, the United States, as
21 plaintiff, brought suit against several hundred defendants within
22 the Stony Creek watershed, seeking an adjudication of all parties'
23 respective water rights.  The United States District Court, sitting

---

25 [1] For further background, see United States v. Angle, 760
26 F.Supp. 1366 (E.D. Cal. 1991), rev'd by Wackerman Dairy, Inc. v.
Wilson, 7 F.3d 891 (9th Cir. 1993).

1  in equity, issued its decision in 1930, in what is commonly
2  referred to as the Angle Decree. Pursuant to this decree, the
3  Bureau of Reclamation owns specific rights to water which it uses
4  in operating the Orland Project, serving the members of the Orland
5  Unit Water Users Association. The decree sets a variety of limits
6  on how this and other water can be used, including the which lands
7  may be irrigated (the Project Lands Schedule).

8  **B.    The Proposed Modifications**

9  The Bureau of Reclamation, still appearing as plaintiff in
10 this suit, now seeks to modify the Project Land Schedule.
11 According to plaintiff, current irrigation practices violate the
12 Project Lands Schedule. Pl.'s Mem. Supp. Mot., 3, 7. This is
13 because some land initially included in the schedule has proven to
14 be unproductive or unirrigable, and the Bureau has allowed water
15 to be moved to more productive land. The Bureau therefore seeks
16 to modify the decree to legitimize current practice.

17 The proposed modifications would increase the total acreage
18 of lands eligible for irrigation from 21,000 acres to approximately
19 22,633 acres. However, there would be no change in the number of
20 acres actually irrigated in any given year, or in the amount of
21 water actually used.

22 Additionally, the Bureau of Reclamation proposes incorporating
23 into the decree a modified process for future modification of the
24 decree's project land schedule.

25 The propose amendments have the support of the Water Master
26 designated to oversee the decree and the Orland Unit Water Users

1    Association.

2    **C.    Defendant Barkley's Allegations**

3         One defendant to the decree has filed objections to the

4    proposed amendment, along with a cross motion that seeks to vacate

5    the entire decree.  This defendant, Michael Barkley ("defendant"),

6    owns property in the Stony Creek watershed upstream from the Orland

7    Project, and has inherited a water right provided in the original

8    decree.

9         The impetus behind defendant's motion is clear.    As

10   exemplified by defendant himself, many upstream Stony Creek

11   property owners believe that the Angle consent decree was an

12   injustice, and that "the Government stole our water."   Amended

13   Opp'n, 2.   Defendant contends that in the original Angle

14   litigation, the United States sought

15                    to strip water rights from all persons
                      possibly having a claim to upstream Stony
16                    Creek water regardless of whether or not
                      Orland Project waters flowed past their lands.
17                    Over the next 12 years Reclamation settled out
                      the few defendants with enough resources to
18                    defend themselves, and then reduced all
                      possible claims through aggressive litigation
19                    tactics until only a handful of upstream users
                      remained . . . .  Many defendants, cowed by
20                    Reclamation's aggression[,] walked away from
                      their rightful claims.   Others, even after
21                    their rights were acknowledged, walked away
                      from their entitlements rather than try to pay
22                    the water master fees . . . levied during the
                      Depression.

23

24   Amended Opp'n, 3.  Defendant alleges that insult was added to this

25   injury in that, although the decree allocated limited rights to

26   upstream users, these users must watch an average of 23,000 acre-

feet of water flow through their lands annually.  <u>Id.</u> at 5.

Defendant's initial opposition memorandum recounted this history, as well as subsequent "oppressive" acts taken pursuant to the decree, but it contained little in the way of citation to evidence and otherwise showed signs of being hastily prepared.  The memorandum itself acknowledged these faults, and requested an opportunity to file an amended opposition.  The court granted defendant an additional month to file an amended opposition. Defendant availed himself of this opportunity, but again concedes that the opposition provides little in the way of documentation. For example, defendant has provided no evidence supporting the above-recounted retelling of the Angle adjudication.

**II. STANDARD**

**A.    Standard for a Motion to Amend the Decree**

The 1930 Angle Decree provides the applicable standard of review to determine whether the Decree should be amended with regard to the elements of the water rights determined by the court, including changes in the place of use of the water.  The Decree provides that:

> any of the parties to whom the rights to water have been decreed herein shall be entitled, in accordance with applicable laws and legal principles, to change the point of diversion and the places, means, manner or purpose of the use of the water to which they are so entitled or for any part thereof, so far as they may do so without injury to the rights of the other parties as the same are defined herein.

Angle Decree at 175.  As long as a party with decreed water rights

5

1  can demonstrate that the proposed change is in accordance with

2  applicable laws, then the only consideration for the court is

3  whether the change can be accomplished "without injury to the

4  rights of other parties" as defined in the decree. Absent proof of

5  injury, a party is entitled to change the place of use of its water

6  rights.

7  **B.    Standard for A Motion Seeking Relief from a Judgment, Order**

8  **or Proceeding**

9  Defendant admits that he is unclear as to how his counter-

10 motion should be characterized.  He suggests that it might be

11 brought under Fed. R. Civ. P. 60(d)(1) or (3).  These provisions

12 do not themselves grant any authority to the court.  Instead, they

13 note that Rule 60 does not limit a court's power to "entertain an

14 independent action to relieve a party from a judgment" or to "set

15 aside a judgment for fraud on the court." Rule 60(d)(1), (d)(3).

16 Defendant has not filed an independent action, nor has he alleged

17 fraud on the court.

18 Thus, defendant's counter-motion is instead best characterized

19 as a motion under Fed. R. Civ. P. 60(b),[2] which permits a court to

20 "relieve a party or its legal representative from a final judgment,

21 order or proceeding."  Relief may be warranted by, _inter alia_,

22 fraud, misrepresentation, or misconduct by an opposing party, Rule

23

24

25 [2] Although Rule 60 was rewritten in 2007, the advisory
committee notes indicate that none of the amendments since 1948
26 have changed the substance of the rule, so the guidance provided
by prior cases interpreting the rule still applies.

1  60(b)(3),[3] when applying the judgment prospectively is no longer

2  equitable, 60(b)(5), or for "any other reason that justifies

3  relief," 60(b)(6).  The burden of proof is on the party bringing

4  the Rule 60 motion.  <u>Rufo v. Inmates of Suffolk County Jail</u>, 502

5  U.S. 367, 383 (1992) (the "party seeking modification of a consent

6  decree bears the burden of establishing that a significant change

7  in circumstances warrants revision of the decree."), <u>United States</u>

8  <u>v. Metro. St. Louis Sewer Dist.</u>, 440 F.3d 930, 935 (8th Cir.

9  2006)(party bringing a Rule 60(b)(3) motion must provide clear and

10 convincing evidence of fraud), <u>Mountain Gold Properties v. City of</u>

11 <u>Lathrup Village</u>, 874 F. Supp. 769, 772 (E.D. Mich. 1995) (denying

12 request to modify consent decree because Rule 60(b)(5) movant

13 failed to provide evidence supporting his claims).

14                            **III. ANALYSIS**

15 **A.   Counter-motion**

16     The court begins with defendant's counter-motion, because if

17 the decree is vacated, the motion to amend will become moot.  As

18 noted above, defendant challenges the legitimacy of the original

19 decree, and argues in the alternative that circumstances arising

20 since the decree was adopted warrant vacating or substantially

21 modifying the decree.

22     At the outset, the court notes that defendant has standing to

23 bring this counter-motion.  Defendant owns a share in a water right

24 _____

25     [3] However, as discussed below, a Rule 60(b)(3) motion must be
   brought within one year of the entry of judgment. Fed. R. Civ. P.
26 60(c)(1).

                                   7

provided by the decree, as well as property in upstream Stony Creek that would potentially receive additional riparian water rights if the decree was vacated.  See Sur-reply at 4 (citing Decree at 133, 134).  These interests are sufficient to give rise to case or controversy.  Although the decree itself may prohibit defendant's predecessors-in-interest, and therefore defendant himself, from challenging aspects of the decree, this prohibition goes only to the merits of defendant's counter-motion.[4]

**2.   Defendant's Challenge to the Original Decree**

Defendant argues that the original decree misapplied applicable California law, contained numerous factual errors, was marred by an unjust and coercive process that precluded meaningful participation by many defendants, and was otherwise inequitable.

The court does not address the merits of these claims, or whether defendant has provided evidence to support them, because the time for raising these arguments has long passed.  In discussing a similar adjudication of water rights, the Ninth Circuit held that the resulting decree "is res judicata as to all parties represented in the litigation and their privy; accordingly such parties cannot seek additional rights to the [adjudicated] waters."  United States v. Orr Water Ditch Co., 914 F.2d 1302, 1304 (9th Cir. 1990) (citing Nevada v. United States, 463 U.S. 110

---

[4] The court further notes that defendant has alleged that he will suffer injury from the amendment in particular, in that the amendment may allow Orland Project water users to use water that could otherwise revert to defendant, and in that the amendment validates the continued existence of the decree.  The merits of these allegations are discussed in the opinion.

1   (1983)).  Here, res judicata is not directly applicable.  While

2   that doctrine bars claims that could have been adjudicated in an

3   earlier, separate suit, in this case, defendant's motion is brought

4   in the same suit that produced the original decree.[5]  C.f. Nevada,

5   463 U.S. at 113 (plaintiff brought a separate suit seeking

6   additional rights).

7        Rule 60 nonetheless encompasses similar principles.

8   Defendant's primary allegations concern misconduct on the part of

9   the United States before and during the Stony Creek adjudication.

10  Rule 60(b)(3) permits a party to seek relief from a judgment, order

11  or proceeding on these grounds, however, the motion must be brought

12  no more than a year after the entry of such order.  Fed. R. Civ.

13  P. 60(c)(2).  Motions brought under Rule 60(b)(5) and 60(b)(6) are

14  not subject to this one-year limit, but "must be made within a

15  reasonable time."

16       Defendant has failed to provide arguments or evidence that

17  would support the astounding conclusion that a delay of seventy-

18  eight years was reasonable.  Defendant's separate allegations of

19  changed circumstances--for example, changes the population and

20  water use in the relevant counties, or identification of various

21  fresh-water aquifers--do not justify the delay in bringing the

22  claim that the decree was improper from the outset.  Other factors

23  cited by defendant, such as the development of photocopiers, the

24

25       [5] Defendant has argued that res judicata might also prohibit
     plaintiff's attempt to amend the decree.  Res judicata in no way
     limits plaintiff's ability to use the amendment procedure provided
26   by the decree itself.

1  advent of the internet as a tool for research, and the court's
2  adoption of CM/ECF, have reduced the cost of filing this motion
3  (and, the court hopes, furthered the inexpensive and just
4  resolution of controversies in general), but this reduction in cost
5  does not itself justify re-examining old cases.  Surreply, 22.

6       Finally, defendant argues that these arguments could only be
7  raised in an opposition to another party's motion to modify the
8  decree, because Article XVII of the degree forbids defendant from
9  challenging the decree.  On this, defendant is half correct.
10 Article XVII "forever enjoined and restrained" parties to the
11 decree, their successors and assigns "from asserting or claiming
12 . . . any right, title or interest in or to the waters of Stony
13 Creek or its tributaries . . . except the rights specified . . .
14 by this decree."[6]  Decree, 177-78.  Because defendant argues that
15 the decree wrongfully deprived his predecessors of their water
16 rights, his claim violates this prohibition.  This prohibition is
17 not relaxed or waived by plaintiff's motion to amend.  Therefore,
18 rather than providing a justification for defendant's delay,
19 Article XVII provides an independent ground for denying defendant's
20 counter-motion.

21      Therefore, to the extend that defendant's counter-motion
22 argues that the decree was invalid when it was adopted, the
23 counter-motion must be denied.

24 ───────────────

25      [6]  Plaintiffs, however, seek to invoke the amendment process
   provided by the decree itself, and thereby do not violate Article
26 XVII.

10

1          **3.    Whether Changed Circumstances Undermine the Decree**

2          The argument that changed circumstances have rendered the

3    decree inequitable presents a different set of issues.  Here, the

4    running of a "reasonable time" must be measured from the onset of

5    the changed circumstances.  As such, defendant's argument is not

6    obviously time barred.[7]    However, the changed circumstances

7    argument must fail on the merits.

8          The first changed circumstance identified by defendant is the

9    availability of alternate water sources and infrastructure.

10   Defendant is apparently under the impression that California enjoys

11   a surplus of water.[8]  Based on this premise, defendant argues that

12   because other sources can meet the Orland Project's need for water,

13   allocating Stony Creek water to the Orland Project is no longer

14   equitable.  Because defendant has not provided evidence that such

15   a surplus exists, the court does not express an opinion as to what

16   consequences would follow from such a surplus.

17          The second changed circumstance is the series of allegedly

18   "oppressive" events performed in enforcement of the decree.  As

19   plaintiff notes, defendant has not provided any evidence of six the

20

21

22   ───────────────

23          [7] To determine whether these claims were time barred, the
     court would need to determine when each of the changes in
     circumstance became relevant, and determine whether the period
24   between that time and the present was reasonable.

25          [8] In this belief, defendant may be alone.  See, e.g., Matt
     Weiser, Water Watchers Cast A Wary Eye, Sacramento Bee, February
26   2, 2009, at page A1 (above the fold).

1   alleged events, most of which occurred prior to 1950.[9]   Each

2   particular event is described in so little detail that the court

3   cannot even evaluate the consequences that would follow from an

4   assumption that the allegations are true.  Similarly, defendant has

5   not supported his allegation that the decree has been only

6   selectively enforced.[10]   Accordingly, defendant has not shown

7   grounds for relief from the decree.

8   **B.   Motion to Amend**

9        Having concluded that defendant's challenges to the decree

10  itself fail, the court turns to plaintiff's motion to amend the

11  decree.  As stated above, this motion turns on whether there are

12  harmful effects to other water users.  The Orland Unit Water Users

13  Association and the water master have stated that they do not

14  believe any such harms will ensue.

15       Defendant has identified only speculative and attenuated harms

16  resulting from the proposed amendment.  In essence, defendant

17  alleges that if the amendment is denied, the Orland Unit Water

18  Users Association will be less likely to use their entire allotment

19  of water, and that any surplus water will be likely to be made

20

21        [9] Defendant alleges events in 1931, 1932, 1933, 1947, 1985,
    and 1992.  Amended Opp'n, 5-6.

22        [10] The court notes that plaintiff's present motion effectively
    concedes that users of Orland Project water are currently in
23  violation of the decree--plaintiff seeks to amend the decree "to
    conform to current irrigation practices," rather than to permit a
24  prospective change in said practices.  Pl.'s Mem., 1.  However,
    defendant has not identified any enforcement action since 1992 that
25  could be juxtaposed with this present lenience.  Moreover,
    defendant has not established that the just response to selective
26  enforcement, if it were shown, would be to vacate the decree.

12

1    available for upstream users, pursuant to California's developing

2    "local preference" laws, e.g., California Water Code Section 11460.

3    Again, defendant has failed to meet his burden in supporting this

4    argument.   Although the region is undoubtedly changing, the

5    documents cited by defendant do not establish that these changes

6    will result in reduced demand for irrigation water.   As to the

7    second step in defendant's argument, a proposal to amend the decree

8    is to be granted unless it would cause injury to water rights

9    provided by the decree.   Decree, 175.   Defendant has not argued

10   that the decree establishes any reversionary or other water right

11   for upstream users, and the proposed amendment would not impact

12   defendant's water right under the decree.

13   **C.    Concluding Remarks**

14        Defendant's opposition and counter-motion are premised on the

15   belief that it would be unfair to allow the Bureau to change some

16   parts of the decree without allowing defendant to argue that other

17   parts should also be changed.   The court has addressed this

18   argument in the discussion above.   However, this point bears

19   repeating.   Plaintiff and defendant seek strikingly different

20   things.   Plaintiff seeks to make use of the decree's own procedures

21   for amendment.   Defendant, on the other hand, requests changes that

22   cannot be made through this amendment procedure.   As such, there

23   is no inconsistency in granting plaintiff's request for amendment

24   while denying defendant's motion.   Because the reasonable time for

25   such challenges has passed, this court lacks the power to address

26   the merits of defendant's challenge to the original decree, and

13

plaintiff's amendment of the decree does not change that fact.

## IV. CONCLUSION

For the reasons stated above, plaintiff's motion to amend the Angle decree is GRANTED, and defendant's motion to vacate the decree is DENIED.

IT IS HEREBY ORDERED THAT the plaintiff's motion to amend the Angle Decree is GRANTED.  To accomplish this result and ensure consistency with the Angle Decree without injuring any other party, the Court finds that the following portion of Article VIII, ¶ (1) of the Angle Decree should be amended, with proposed additions to the existing Decree language in **bold italic** text and proposed deletions from Decree in ~~strikeout~~ text, as follows:

> The right, by reservation and appropriation, to divert 85,050 acre-feet of the waters of Stony Creek and its tributaries, during each irrigation season, from the natural flow in said creek at the South and North Diversion Dams of the Orland Project—as of the date of priority of October 10, 1906, and to the extent that such waters are available under said priority—at a rate of diversion not exceeding 279 cubic feet per second at any time during the season, for the reclamation and irrigation of ~~the~~ ***up to*** 21,000 acres of ~~irrigable~~ ***the gross*** lands of the Orland Project described in the Project Land Schedule as appended to this Article of the decree and made part hereof; that said schedule ~~(with those of similar character in this decree)~~, by a system of horizontal and vertical columns, sets down the legal subdivisions of the ***gross*** lands affected, and in the squares thus formed indicates in acreage figures ~~the irrigable area~~ of each quarter-quarter section (or 40-acre tract) ***constituting the gross lands***; subdivisions of the listed sections which are excluded from the schedule being denoted by squares containing no acreage figures;

Article VIII, ¶ (1) of the Angle Decree, as so modified to reflect these changes, henceforth shall read as follows:

> The right, by reservation and appropriation, to divert 85,050 acre-feet of the waters of Stony Creek and its tributaries, during each irrigation season, from the natural flow in said creek at the South and North Diversion Dams of the Orland Project—as of the date of priority of October 10, 1906, and to the extent that such waters are available under said priority—at a rate of diversion not exceeding 279 cubic feet per second at any time during the season, for the reclamation and irrigation of up to 21,000 acres of the gross lands of the Orland Project described in the Project Land Schedule as appended to this Article of the decree and made part hereof; that said schedule by a system of horizontal and vertical columns, sets down the legal subdivisions of the gross lands affected, and in the squares thus formed indicates in acreage figures of each quarter-quarter section (or 40-acre tract) constituting the gross lands; subdivisions of the listed sections which are excluded from the schedule being denoted by squares containing no acreage figures;

IT IS FURTHER ORDERED THAT the plaintiff's motion to establish a process for any future annexations and changes in the place of use of water rights under the Angle decree is GRANTED, as follows:

Reclamation shall not issue additional or new Final Water Right Certificates for lands outside the Project Land Schedule, as set forth in the Decree, nor shall the agency approve any additional or new water right applications for such lands, without first receiving the approval of this Court.  In considering any such matters, the parties are directed to comply with the following procedures:

First, the party proposing the annexation shall prepare a

1   written request for annexation and submit that request to the

2   Orland Unit Water Users' Association (OUWUA) for initial review.

3      Second, OUWUA shall review any request for annexation and

4   concur with the annexation if the property is serviceable from an

5   existing or a modified Orland Project canal or lateral without

6   hindering service to other Orland Project Lands and if providing

7   water service to the property would not result in any water supply

8   shortages to the lands already within the Project.

9      Third, if the OUWUA Board of Directors determines that the

10  proposed lands should be annexed, then OUWUA shall file an

11  application for a water rights certificate with Reclamation.

12     Fourth, if Reclamation deems such application acceptable for

13  processing, then OUWUA shall forward the request for annexation to

14  the Water Master for the Water Master's independent review as to

15  whether the proposed addition of lands to the place of use will

16  injure the rights of other parties to the Angle Decree.

17     Fifth, the Water Master shall document findings regarding no

18  injury to other parties.  If, upon completing an independent

19  review, the Water Master determines that the proposed addition will

20  not injure the rights of other parties to the Angle Decree, the

21  Water Master shall cause notice of the proposed change in the place

22  of use to be filed with the court and promptly served via certified

23  mail upon all of the parties listed on the court's service list for

24  the Angle Decree.

25     Sixth, any objections or protests to the proposed change in

26  place of use then must be submitted to the Water Master within 60

1  days of the Water Master's filing of the notice with the court.

2  If any such protest or objection is filed, then the United States

3  would file a notice and motion with the Court to address the

4  proposed change in place of use.

5       Seventh, if no objection or protest were filed with 60 days,

6  then the United States promptly would file with the Court a

7  proposed order to amend the place of use as set forth in the

8  notice, and the Court may approve the order without a further

9  hearing.  Such order would provide that the number of acres within

10 the Orland Project to which Orland Project water may be delivered

11 in any given irrigation season, including the newly annexed lands,

12 will remain capped at 21,000 acres, as prescribed in the Angle

13 Decree.

14      Finally, before Reclamation may consider issuing any

15 additional or new certificates (or approving any additional or new

16 water right applications) for lands that would otherwise increase

17 the total irrigated acreage for the Orland Project above the

18 current limit of 21,000 acres, Reclamation first would be required

19 to cancel existing certificates as necessary or practicable, within

20 the agency's discretion, to remain within the 21,000-acre Angle

21 Decree limitation.  This ceiling on the total number of irrigated

22 acres would remain the responsibility of Reclamation to enforce

23 through the regular duties of the Court-appointed Federal

24 Watermaster who administers the Angle Decree.

25      IT IS SO ORDERED.

26      DATED:  February 11, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT