1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9

THE UNITED STATES OF AMERICA,

10
                                          NO. CIV. S-80-583 LKK
11              Plaintiff,

12       v.
                                          O R D E R
13   H.C. ANGLE, et al.,

14
                Defendants.
15   _____/

16       In  1918,  the  United  States  commenced  a  water  rights

17   adjudication to settle the rights to the flows of Stony Creek and

18   its tributaries in Northern California.   This culminated in the

19   Angle Decree of January 13, 1930.   The Angle Decree has since been

20   overseen by a court appointed Water Master.

21       Michael Barkley is an inheritor of rights adjudicated by this

22   decree and therefore a defendant in this action.   Barkley began

23   actively participating in this litigation in 2008, when he opposed

24   an amendment to the decree and moved to vacate the decree in its

25   entirety.    The  court  ruled  against  Barkley  and  denied  his

26   subsequent motion for reconsideration.  Orders of February 11 and

                                    1

1    May 5, 2009.  Barkley now brings a motion under Article XVI of the

2    Decree, styled a "Motion to Require Changes in Practices of The

3    Water Master."  In part, this motion seeks to change or clarify the

4    administration of the Water Master's office.  For example, Barkley

5    seeks increased access to the Water Master's records.  The bulk of

6    the motion, however, seeks to compel the Water Master "to accept

7    the interpretations described in defendant Barkley's Memorandum .

8    . . or else defend his positions to the contrary with specific

9    quotes of the page, paragraph, and exact text from the Decree."

10   Def.'s Proposed Order, at 2.  These interpretations pertain to

11   "underflow," accounting for parties' diversions, and storage of

12   Decree water.

13       The court resolves the motion on the papers and after oral

14   argument.  For the reasons stated below, the motion is denied.

15                           **I.  Background**

16   **A.    The Angle Decree**

17       The court recently summarized the history of the Angle Decree

18   as follows:

19               The Reclamation Act of 1902, 43 U.S.C. § 391
                 et seq., empowers the federal government to
20               acquire water rights for the reclamation and
                 irrigation of land.  Pursuant to this
21               authority, the United States Bureau of
                 Reclamation sought to . . . acquire water from
22               Stony Creek to serve the Orland Reclamation
                 Project.
23
                 In an action commenced in 1918, the United
24               States, as plaintiff, brought suit against
                 several hundred defendants within the Stony
25               Creek watershed, seeking an adjudication of
                 all parties' respective water rights. The
26               United States District Court, sitting in

                                    2

1
2
3
4
5
6

> equity, issued its decision in 1930, in what
> is commonly referred to as the Angle Decree.
> Pursuant to this decree, the Bureau of
> Reclamation owns specific rights to water
> which it uses in operating the Orland Project,
> serving the members of the Orland Unit Water
> Users Association. The decree sets a variety
> of limits on how this and other water can be
> used, including the which lands may be
> irrigated (the Project Lands Schedule).

7  Order of Feb. 11, 2009, 2009 WL 347749, *1-2, 2009 U.S. Dist. LEXIS

8  14083, *2-3.  See also United States v. Angle, 760 F. Supp. 1366

9  (E.D. Cal. 1991), rev'd sub nom Wackerman Dairy, Inc. v. Wilson,

10  7 F.3d 891 (9th Cir. 1993).

11      As the Ninth Circuit has observed, "[t]he Angle Decree is

12  structured compartmentally."  Wackerman Dairy, 7 F.3d at 894.

13  Notably, different Articles pertain to different types of water

14  rights recognized under California law.  Article VII concerns

15  rights by appropriation, setting forth the rights of 117

16  appropriators, specifying their amount and rate of water to be

17  diverted and the land on which the water may be used.  Articles XII

18  and XIII determine the rights of riparian owners.  Beyond these

19  general categories, the Decree recognizes the rights of the federal

20  government (Article VIII), the Grindstone Indian Reservation

21  (Article X), and the Glenn-Colusa Irrigation District (Article

22  XIV).  Articles I through VI dispose of the rights of various

23  defendants, and Articles XV through XVII set forth general

24  provisions.

25  **B.    The Water Master**

26      Under Article XVI of the Angle Decree, a Water Master is

1 appointed to carry out and enforce the provisions of the decree.

2 Decree at 176.   The Water Master may issue orders, rules and

3 directions in connection with these duties, and if these are

4 disobeyed, he may cut off the violator's access to Decree water as

5 a sanction, reporting the violation and the sanction to the court.

6 Id.   The Decree authorizes the Water Master to hire a support

7 staff.   Id.   Grievances against the Water Master may be filed with

8 this court after service on the Water Master.   Id.

9      Barkley states that he intends this motion to be a complaint

10 against the Water Master under Article XVI of the Decree, and he

11 declares that he served the Water Master prior to filing the

12 instant motion.   Memo at 4, section I.F-G

13 **C.   Procedural History**

14      The recent round of Angle litigation began on September 5,

15 2008, when the United States filed a motion to amend the decree.

16 Barkley opposed this motion and filed a concurrent "cross-motion"

17 seeking to vacate the entire Decree.   Barkley argued "that the

18 original decree misapplied applicable California law, contained

19 numerous factual errors, was marred by an unjust and coercive

20 process that precluded meaningful participation by many defendants,

21 and was otherwise inequitable."   Order of February 11, 2009 at 8.

22 The court denied Barkley's motion and granted the United States'

23 motion to amend.

24      Barkley filed a motion for reconsideration, which this court

25 denied on May 4, 2009.   In the motion for reconsideration, Barkley

26 requested that the court modify the Decree "by inserting language

1  confirming defendant's riparian rights to certain underflow."

2  Order of May 4, 2009 at 6, 2009 U.S. Dist. LEXIS 41320, *8, 2009

3  WL 1212240, *3.  Without reaching the merits of the underflow

4  issue, the court held this issue was not raised in the prior

5  motions, and the court therefore declined to address it for the

6  first time in a motion for reconsideration.

7       Barkley's next filing was before the California State Water

8  Resources Control Board ("SWRCB").  On October 1, 2009, Barkley

9  filed a "protest" to an application for a permit extension filed

10  by the Bureau of Reclamation.  See Exhibit filed Dec. 22, 2009,

11  Dkt. No. 307-3.  In this protest, Barkley repeated many of the

12  arguments he previously made to this court, including his arguments

13  concerning fraud on the court during the initial proceedings.

14  Barkley's protest also argues that SWRCB lacks jurisdiction over

15  surface waters adjudicated by the decree, but that SWRCB retains

16  jurisdiction of subsurface and non-Decree waters.  Id. at CM/ECF

17  page 15-17.  The protest then makes several arguments relating to

18  underflow, including arguing that underflow is outside the scope

19  of the Angle Decree.

20                         **II. Discussion**

21       As noted, Barkley seeks two types of relief: changes in the

22  administration of the Water Master's office and substantive

23  interpretation of the Decree.  Because some of the administrative

24  changes are argued to be necessary to implement Barkley's

25  interpretation of the Decree, the court begins with the questions

26  pertaining to interpretation.

**A.    Barkley's Request to Compel Interpretation of The Decree**

Barkley asks the court to order the Water Master to adopt or rebut Barkley's interpretation of the Decree as it pertains to "Interpretation of Underflow," "Coverage of All Parties," and "Storage of Diversion Water."  Def.'s Mem., §§ IV, V, and VI. Although the United States vigorously opposes Barkley's motion, the United States has not addressed the substance of Barkley's interpretations.  As explained below, at this point, the court can do no more than attempt to understand the nature of Barkley's claims and identify procedures for their resolution.

   **1.    Underflow**

Barkley contends that "the Angle Decree covers surface flows only."  The United States and Water Master do not take a position as to whether this contention is correct.  Instead, both argue that the Water Master is not the party who should answer the question. Although the government appears to be correct in this regard, Barkley has a right to an answer from someone.  For the reasons explained below, at this stage, the court will wait for the SWRCB process to be completed.  If Barkley wishes to proceed further here, he may do so through a declaratory judgment action.

The government first argues that the court should abstain under the doctrine of primary jurisdiction in order to let the SWRCB take the first crack at interpreting the Decree in this regard.

////

////

6

> The primary jurisdiction doctrine provides: When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved.

Rhoades v. Avon Prods., 504 F.3d 1151, 1162 (9th Cir. 2007) (quoting United States v. Culliton, 328 F.3d 1074, 1081 (9th Cir. 2003)). Before the court may "route" the question to SWRCB, the court must determine that the SWRCB is better positioned to answer it. Id. at 1164 ("Allowing the district court to decline a declaratory relief action on a primary jurisdiction rationale is sensible only if the agency is better equipped to handle the action."). The government has not addressed this issue.

The water rights adjudicated by the Decree are created under and governed by California law. Wackerman Dairy, 7 F.3d at 896. The Decree recognizes riparian, appropriative, and contractual water rights. Id. The Decree does not explicitly discuss rights to groundwater. Underflow, the subject of Barkley's motion, is subsurface water flowing in association with a surface stream. Verdugo Canon Water Co. v. Verdugo, 152 Cal. 655, 663 (1908) (underflow includes the water flowing through the "soil, sand, and gravel, composing the bed" of the surface channel); Vineland Irrigation Dist. v. Azusa Irrigating Co., 126 Cal. 486, 494-95 (1899) ("underflow . . . . is the broad and deep subterranean volume of water which slowly flows through the sand and gravel underlying" surface streams) (quotation omitted), see also San

1  <u>Bernardino v. Riverside</u>, 186 Cal. 7, 14 (1921).  Such water is

2  generally subject to the same rules as surface flows, and as such,

3  it is subject to SWRCB's jurisdiction.  <u>See, e.g.</u>, <u>Verdugo Canon</u>

4  <u>Water Co.</u>, 152 Cal. at 663.  Insofar as Barkley's question is

5  whether the types of surface water rights recognized by the Decree

6  carry with them a right to underflow, the SWRCB is "better

7  equipped" than this court to interpret the scope of California

8  water rights.

9       Barkley's argument extends beyond the mere scope of California

10  water rights, because he argues that with one exception "[t]he

11  Angle Decree specifically excludes any coverage of underflow or

12  supporting flow of underground streams."  Protest at 11.  The

13  court, rather than SWRCB, is better equipped to interpret the

14  Decree in this regard.  The "threshold decision" to such

15  interpretation will, however, be the ordinary scope of California

16  water rights.  Accordingly, it is appropriate to allow SWRCB to

17  answer that preliminary question first.

18       Pragmatically, although the government asks this court to

19  decline jurisdiction pending completion of SWRCB proceedings, it

20  appears that those proceedings are drawing to a close.  The SWRCB

21  has already denied Barkley's protest, but Barkley has filed a

22  petition for reconsideration.  The state administrative process is

23  therefore nearly exhausted.  Thus, a stay rather than a dismissal

24  would be more appropriate in these circumstances.  <u>Davel</u>

25  <u>Communications, Inc. v. Qwest Corp.</u>, 460 F.3d 1075 (9th Cir. 2006)

26  (court may stay or a dismiss a case under the primary jurisdiction

1  doctrine).

2    Barkley's motion faces a further defect, however, in that it

3  seeks relief from the wrong party.  The instant motion seeks to

4  compel the Water Master to adopt or defend an interpretation of the

5  Decree.  The government argues, without citation to authority, that

6  the Water Master's duties do not extend to such interpretation.

7  Accord Wilson Decl. ¶ 8.  Insofar as the Water Master has authority

8  to "carry out and enforce" the Decree and to issue "orders, rules

9  [and] directions," this authority must carry with it some power to

10 interpret the Decree.  Decree Article XVI.  Nonetheless, the court

11 agrees that the primary responsibility for interpretation of the

12 Decree rests in the court.  Barkley's request would therefore be

13 better treated as a claim for a declaratory judgment.

14    The combined effect of these two concerns is that the court

15 denies the present motion insofar as it pertains to underflow, but

16 denial is without prejudice to renewal as a declaratory judgment

17 action once the SWRCB process is complete.

18    Two of the government's arguments remain.  The government

19 incorrectly asserts that the court has previously rejected

20 Barkley's underflow arguments.  Barkley's motion for

21 reconsideration did ask the court to hold that the Decree did not

22 include underflow.  The court held that the issue was not properly

23 before the court because the underlying motion made no mention of

24 underflow.  The court therefore has not addressed the merits of

25 this argument.  In a separate argument, the government implies that

26 after the SWRCB proceedings, Barkley should turn to state court.

1  If the court has properly understood Barkley's argument, that

2  argument should be presented here.[1]

### 2.   Excess Diversions

4  Barkley's second request is that the court order the Water

5  Master to interpret the Decree as "cover[ing] all parties,"

6  specifically the United States and the Orland Unit Water Users

7  Association.  This request is a red herring, because Barkley, the

8  government, the Water Master, and this court all agree that the

9  government and OUWUA are subject to the Decree.

10  Barkley's actual argument is that the United States and OUWUA

11  have violated the Decree by diverting water in excess of the

12  Bureau's allotment and by using water in ways not permitted.  From

13  this premise, Barkley concludes that the Water Master is aware of

14  these actions, but that the Water Master has permitted them because

15  he has somehow concluded that the United States and OUWUA are not

16  subject to the Decree.  Barkley requests that the Water Master be

17  ordered to tabulate these "excess" diversions throughout the

18  history of the decree

19  Putting aside this strange posture, it is clear that parties

20  must be able to bring actions to enforce the terms of the Decree.

21  Although Barkley's briefing is difficult to follow, it appears that

22

23  [1] The court notes that it is not clear whether there is any dispute as to whether the Decree covers underflow. As noted above, the government and Water Master have explicitly avoided stating a
24  position on the matter.  Both assert, however, that neither the United States nor the Orland Unit Water Users Association are
25  diverting underflow. Wilson Decl. ¶ 8, Pl.'s Opp'n at 6.  Although SWRCB denied Barkley's protest, no party has indicated whether
26  SWRCB took a position on the underflow issue.

1   he intends to bring such an action.[2]   Insofar as the federally

2   appointed Water Master has authority and responsibility to enforce

3   the Decree, it is unclear what role, if any, SWRCB plays in this

4   enforcement.   Accordingly, the government's primary jurisdiction

5   argument is inapplicable here.

6        Enforcement of the decree requires a determination of what the

7   Decree permits parties to do and a determination of what the

8   parties are actually doing.   Both issues appear to be in dispute.

9   The court is not capable of resolving the dispute at this juncture

10  and on the briefing presently submitted.   Barkley requests that the

11  Water Master be ordered to tabulate "a schedule of excess

12  diversions year by year by" the United States, OUWUA, Glen-Colusa

13  Irrigation District, and downstream underflow pumpers, together

14  with a list of the uses to which the diverted water has been put.

15  The court declines to so order at this time.   Instead, the court

16  directs the parties to submit briefing regarding the proper

17  procedure for use in an action to enforce the Decree.

18  **3.    Storage of Water**

19       Finally, Barkley seeks an order stating that parties to the

20  Decree may store their diverted water.   This question appears to

21  turn entirely on interpretation of the Decree and the limits to

22  water use specified therein, rather than on general principles of

23  _____

24  [2] The government argues that the instant motion is merely a
    further attempt to  "reopen and relitigate elements of the Angle
    Decree that have been fully adjudicated."  Pl.'s Opp'n, 6:11-12.
25  Although the SWRCB protest repeats many of the challenges to the
    Decree, these portions of the protest are generally not
26  incorporated into the instant motion.

1 | California water law.  Accordingly, the court need not wait for

2 | SWRCB to consider the issue.

3 | As with the other issues, while the Water Master implicitly

4 | has some power and responsibility to interpret the Decree in this

5 | regard, interpretation of the Decree is ultimately a matter for the

6 | court.  The United States has not weighed in on the substance of

7 | the storage question, instead challenging the propriety of this

8 | claim as it is brought against the Water Master.  Rather than

9 | attempting to answer the question in its current posture, the court

10 | directs Barkley to file a cross-complaint for a declaratory

11 | judgment in this regard.  If the United States has an opinion on

12 | the substance of the question, the government can present it then.

13 | **B.   Administration of The Office of The Water Master**

14 | The remainder of Barkley's motion concerns administration of

15 | the Water Master's office.  Among the contentions raised on this

16 | subject, the most serious is that Barkley has been denied access

17 | to the Water Master's records.  Barkley has not, however, made a

18 | sufficient showing of such a denial. Apparently, Barkley's brother

19 | Dennis Barkley stopped by the Water Master's office on March 27,

20 | 2009 in an attempt to access records, and the Water Master was out.

21 | See Decl. of George G. Wilson, ¶ 6.  Dennis Barkley left a message

22 | stating "that he would return and pick up the material in one to

23 | three weeks. He has never returned."   Id.   Defendant Michael

24 | Barkley claims that the Water Master's failure to affirmatively

25 | contact Barkley to confirm a convenient time to meet has denied

26 | Barkley access to the records.   In light of Barkley's limited

1  efforts the court declines to order the Water Master to take

2  additional steps.  It appears that Barkley and the Water Master can

3  resolve this issue without the court's aid.

4      Barkley predicts that when he receives access to the records

5  he will nonetheless be prevented from copying them.  The Water

6  Master's office is located within the OUWUA office, and makes use

7  of some OUWUA facilities, although the Water Master is a distinct

8  entity.  Barkley fears that OUWUA, out of hostility to Barkley,

9  will not permit Barkley to use the shared facilities to make copies

10 of Water Master records.  Barkley has not tested this theory.

11 Again, Barkley has not shown an injury sufficient to warrant

12 judicial intervention.

13     Barkley's remaining contentions concern the Water Master's

14 salary, staff, and office space.  Barkley contends that all of

15 these must be increased.  Because Barkley has not shown that the

16 Water Master is performing his duties inadequately, the court

17 declines to order any increase.  While Barkley contends that

18 increases are necessary to allow the Water Master to perform the

19 tabulations Barkley requests, the court does not order the Water

20 Master to perform any such additional work at this time.

21                    **III. Conclusion**

22     For the reasons stated above, the court ORDERS as follows:

23     1.   Defendant Barkley's motion to require changes in the

24          practices of the Water Master, Dkt. No. 307, is DENIED

25          WITHOUT PREJUDICE, as explained above.

26 ////

1    2.    Barkley and the United States SHALL file briefs not to

2            exceed ten (10) pages addressing the manner in which

3            parties may bring actions seeking to enforce the limits

4            imposed by the Decree.  Such briefing SHALL be filed

5            within twenty-eight days of the date of this order.

6    3.    Barkley MAY file a counterclaim for declaratory judgment

7            as to whether parties to the Decree may store Decree

8            water.

9    4.    Barkley MAY file a counterclaim for declaratory judgment

10           as to whether the Decree adjudicates underflow.  Such

11           counterclaim SHALL NOT be filed until Barkley's

12           proceedings before the SWRCB in connection with this

13           issue are complete.

14    IT IS SO ORDERED.

15    DATED:  April 27, 2010.

16

17

18    LAWRENCE K. KARLTON
        SENIOR JUDGE

19    UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

14